HERNKE and another, Respondents, v. CORONET INSUR-ANCE COMPANY, a foreign corporation, and another, Appellants.*

*No. 613 (1974). Submitted on briefs March 4, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 382.)

* Motion for rehearing denied, with costs, on June 2, 1976.

For the appellants the cause was submitted on the brief of *Robert J. Beaudry*, attorney, of West Allis, and *Ronald J. Steinle, Jr.*, of counsel, of Cedarburg.

For the respondents the cause was submitted on the brief of *Bittner, Petitjean & Hinkfuss* of Green Bay.

HANLEY, J. Two issues are presented on this appeal:

1. May the issue of passive negligence be litigated in the circuit court proceeding?

2. Did the trial court err in precluding litigation on the issue of negligence causative of the collision?

*Passive negligence.*

At the outset, the differing language between the order of the trial court and its memorandum discussion must be noted. The order limited the issues at trial to those dealing with damages. The memorandum noted that there will be no issue of negligence with respect to the cause of the accident. Aggravation of injuries through passive negligence in not utilizing available seat belts is a triable issue, *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626. However, respondents concede that this issue of passive negligence is preserved in any case. It clearly was not involved in the litigation in the county court, and the trial court undoubtedly implied this preservation in its reference to negligence causative of the collision.

*Active negligence.*

Appellants Eichler and Coronet contend that the county court resolution of the negligence causative of the May 11, 1972 collision, in which judicial proceeding they participated as parties, cannot be held to resolve the same issue in the circuit court action to which they are also parties.

The trial court concluded that this case was governed by the decision in *McCourt v. Algiers* (1958), 4 Wis. 2d 607, 91 N. W. 2d 194. McCourt was injured in a collision between the car she was driving and a car driven by Algiers. She sued him and his insurer. Algiers denied negligence and interposed McCourt's own negligence in defense. A passenger in the McCourt vehicle meanwhile commenced suit in federal court against McCourt's insurer, Northwestern, claiming negligence in the operation of the McCourt vehicle. The insurer in turn brought in Algiers and his insurer for contribution, and they denied the claim. Algiers also counterclaimed for his own damages. A jury trial in the federal court resulted in a finding of causal negligence on the part of Algiers alone. McCourt in her state action contended the determination of the negligence issues in the federal forum were *res judicata;* but the trial court held otherwise, excluding evidence of the federal court action and submitting questions on negligence to the jury. The jury found that Algiers was not negligent and that McCourt was causally negligent in several respects. McCourt's motions after verdict were denied and judgment was entered on the verdict dismissing her complaint. On appeal this court reversed the trial court with directions to grant a new trial on the sole issue of McCourt's damages.

Objection is made that *McCourt* is authority contrary to the trial court's holding here. Appellants note that Mrs. Hernke was not a party to the county court action

and argue that she cannot be considered privy to the interests of her husband. According to the Restatement of Judgments, a person who is not a party or privy to an action in which a valid judgment was rendered is neither bound by nor entitled to claim the benefits of such an adjudication upon any matter decided in the action. *See:* Restatement, *Judgments,* illustrations 8, 9 and 15, pp. 464–466, sec. 93 (b).

In *McCourt,* the plaintiff also was not a party to the suit wherein judgment was rendered. This fact was not found to be material. As for privity:

"While McCourt was not in privity with her insurer Northwestern in the strict sense of that term, nevertheless there was a close relationship between them with respect to the negligence issues in the federal court. Any potential liability of Northwestern was wholly derived from McCourt and based upon her conduct. Algiers asserted his claim against Northwestern because Northwestern was her insurer, and founded the claim on the premise that she had been negligent. In defending against the claims of Rude and Algiers, Northwestern was in a sense representing McCourt. With respect to the negligence issues it stood in her shoes." *Id.* at page 611.

The Restatement describes various occasions when one not a party to the preceding judgment may be found a privy and be thus bound by it. As in *McCourt,* Mrs. Hernke was one who participated in the preceding action in the sense that her liability was in issue. She did in fact testify as a witness and was the subject of a special verdict question. Section 84 of the Restatement stresses that a participator is in privity if the person shares in the control of the action and has a proprietary or financial interest in the judgment or in the determination of a question of law or fact related to the same subject; this privity also binds the successive opponent who has notice of the control. Appellants cite the absence of control, and

presumably the absence of notice if control existed, as removing Mrs. Hernke from the category of one in privity who may assert *res judicata*.

Before attention is directed to Mrs. Hernke, it must be noted that Mr. Hernke, a successful plaintiff in the county court, is a party plaintiff in the circuit court on his own cause of action. He is seeking recovery of his damages through direct expenditures in the medical treatment of his wife and through the indirect loss of her services, just as he sought recovery in the county court for his damage through injury to his automobile. All of his bases of recovery are premised on the negligence of Eichler and Mrs. Hernke in the operation of their vehicles, which has been conclusively determined between him and the appellants. *See: Northwestern National Casualty Co. v. State Automobile & Casualty Underwriters* (1967), 35 Wis. 2d 237, 244, 245, 151 N. W. 2d 104.

Although the plaintiff in *McCourt* was found to have a close tie with a party of the preceding action, the decision was clearly not premised upon the Restatement element of control for privity. *McCourt* is in fact a departure from the Restatement view.

Rejection of the control test has been found when privity is asserted, for certain purpose, between a husband and wife. This is so when they are involved in separate suits arising out of a personal injury to one of them. Privity is found mainly for the derivative claims a spouse has, *Bitsos v. Red Owl Stores, Inc.* (D. C. S. D. 1972), 350 Fed. Supp. 850; *Houghton v. Novak* (1973), 9 Ill. App. 3d 699, 292 N. E. 2d 905.

In the case at bar, we hold that privity exists as a matter of law between spouses in their principal and derivative suits for recovery of losses growing out of an occurrence in which a personal injury was sustained by one of them. To avoid any hardship, however, a non-

party spouse may notify the other party, similar to the notice provisions of Restatement, *Judgments,* sec. 84, that the presumed privity by control does not exist. The spouse giving such notice thus does not put his or her own cause of action in jeopardy of being bound by a judgment in an action by the other spouse in which the notifying spouse in fact has no control. This procedure allows Mrs. Hernke, who undoubtedly was voluntarily active in the county court action involving her husband, to conclusively rely on that verdict's apportionment of negligence causative of the collision. Under this procedure the defendant may treat the initial suit as binding on the nonparty spouse, taking full measures for his zealous presentation of the issues, unless he has notice that the nonparty spouse is not in shared control and does not wish to be bound by the action.

Appellants argue that the Hernkes may not avail themselves of the doctrine of *res judicata* because they created the separate cases by splitting their causes of action. It should be noted that the only splitting occurred to Mr. Hernke. Restatement, *Judgments,* sec. 62, would ordinarily prevent the maintenance of a subsequent action upon any part of the original cause upon which a judgment was entered such that the owner was precluded from maintaining such a cause, but an exception is made:

"Where the procedure adopted by the plaintiff precluded his recovery for the entire claim and this procedure was essential to preserving his rights, . . ."

It is clear that Mr. Hernke's property damage suit was undertaken in conjunction with the suit of the principal county court plaintiff, his insurer. He was interested to the extent of his payment of a $100 deductible. The rest of his claims were directly related to the separate cause of action of Mrs. Hernke, who was not obliged under *res judicata* purposes to join the first action. Avoidance

of confusion of issues and avoidance of repeated costs and efforts, which would have occurred had Mr. Hernke undertaken proof of his wife's injuries in the county court or had he withheld his property damage claim to the second suit, are situations within the above exception.

When the verdict in the county court was returned, the appellants apparently satisfied the sums claimed by Mr. Hernke and his insurer, and a stipulation of dismissal was executed. The county court ordered the action, with all claims and causes of action set forth in the pleadings, dismissed on the merits with prejudice. Appellants correctly assert that this was not intended to be a dismissal of any cause of action other than those pleaded, but also claim that this was not a final judgment.

In *Werner v. Riemer* (1949), 255 Wis. 386, 402–405, 39 N. W. 2d 457, the court noted:

" 'To distinguish a "judgment" from an "order" the test is not the designation but whether the decision is a final determination of the rights of the parties; if it is, it is a judgment, otherwise it is an order.' (Citations omitted.)

"The fact that part of the adjudication was based upon a stipulation of the parties does not affect its finality. (Citations omitted.)

"The final adjudication is conclusive, in a subsequent action between the same parties, as to all matters which were litigated or which might have been litigated in the former proceedings. (Citations omitted.)

" . . .

" 'The *res adjudicata* [sic] effect of a judgment is not confined to matters appearing on the face thereof. It extends to all questions within the issues, which were actually passed upon in reaching the final conclusion, . . .' " (Citations omitted.)

Noting that the question of negligence was passed upon in the special verdict returned in the county court action, the trial court was correct in finding that a formal written judgment embodying such was unnecessary after

payment in light of the verdict had been made. A final judgment had existed in that action.

Since the question of passive negligence is still in issue, appellants note that there are compelling policy reasons for allowing the question of active negligence to be relitigated. Fairness is one aspect of the application of *res judicata. McCourt, supra,* at page 611. No compelling reason is shown that would justify ignoring the prior verdict. Appellants contend that the jury will be unduly influenced on the question of passive negligence by an instruction or answer by the court that Eichler was negligent and the cause of the collision. The jury will not be any more "influenced" than if they found the fact for themselves. Trial courts make findings as a matter of law on questions of negligence in many special verdict cases. Appellants argue difficulty in presenting the question of passive negligence unless all of the circumstances of the collision, including alleged items of active negligence, are shown. The order of the trial court did not ban all relevant evidence. From the pleadings, the negligence of Eichler was attributed to factors wholly irrelevant to the seat belt issue, such as lookout, management and control, and failure to yield the right-of-way. The trial court will be in a better position to adjudge the relation between the passive negligence issue and items arguably relevant to it or relevant only to active negligence, without need of admitting all evidence and again posing the question of active negligence.

We conclude that the appellants here cannot complain about being bound by the county court action in which they had their full opportunity to litigate the crucial issues between them and the plaintiff married couple. They will be free to raise the issue of passive negligence.

*By the Court.*—Order affirmed.